TOWN OF GRAND CHUTE, a domestic municipality,
Plaintiff-Appellant-Cross-Respondent,

v.

U.S. PAPER CONVERTERS, INC., a domestic corporation,
and R & D Controls, Inc., a Wisconsin corporation,
Defendants-Respondents-Cross-Appellants.

Court of Appeals

*No. 98–2797. Submitted on briefs May 10, 1999.—Decided
July 30, 1999.*

(Also reported in 600 N.W.2d 33.)

674

On behalf of the plaintiff-appellant-cross-respondent, the cause was submitted on the briefs of *Charles D. Koehler* of *Herrling, Clark, Hartzheim & Siddall Ltd.* of Appleton.

On behalf of the defendants-respondents-cross-appellants, the cause was submitted on the briefs of

*Richard J. Carlson* of *Silton, Seifert, Carlson & Gamble, S.C.* of Appleton.

Before Cane, C.J., Myse, P.J., and Hoover, J.

MYSE, P.J.   The Town of Grand Chute (Town) appeals a judgment dismissing its zoning enforcement suit against U.S. Paper Converters, Inc., and R & D Controls, Inc. (collectively USPC). The suit alleged that USPC violated the Town's conditional site plan approval by maintaining a private road contrary to the Town's requirement that the road be removed upon completion of a public road on USPC's property. The Town contends that the trial court erred when it concluded that the Town lacked authority to enforce its conditional approval because it was required but failed to show USPC's noncompliance with an announced rule, standard or requirement forming the basis for the Town's action. The Town further contends that USPC waived its claim that the Town lacked authority because USPC failed to give notice pursuant to § 893.80, Stats., failed to exhaust administrative remedies, and failed to initiate certiorari review. USPC cross-appeals, contending that the Town lacks statutory authority to require site plan approval as a condition precedent to issuing a building permit for a use permitted in the industrial district as a matter of right.

We conclude that the Town possessed legal authority to conditionally approve USPC's site plan and that the Town's site plan ordinance identifying access and traffic flow as a factor of site plan review is a sufficiently specific basis for the planning commission's determination. Accordingly, we reverse the judgment and remand with directions to grant the Town's injunc-

tion. Because our conclusion is dispositive, we need not address the Town's other claims of error. *Sweet v. Berge*, 113 Wis. 2d 61, 67, 334 N.W.2d 559, 562 (Ct. App. 1983) (only dispositive issues need be addressed). Because we conclude that the Town is authorized to establish the right of approval for industrial site development within its boundaries, USPC's cross-appeal fails.

## BACKGROUND

USPC owns property located in an industrial district in the Town of Grand Chute on which it was constructing a paper converting plant. Because the plant's anticipated size exceeded 30,000 square feet, the Town's ordinances required USPC to submit a site plan for the Town's planning commission's approval. USPC's general contractor applied to the Town for a building permit and submitted a site plan showing a roadway along the property's northern property line from the plant to Casaloma Drive. USPC built this roadway to Town road specifications, anticipating its dedication as a public road. The Town granted USPC a culvert permit for access from the northern property line roadway. The USPC property also includes a public road along its southern border accessing Casaloma Drive, which had not been completed at the time USPC began construction.

USPC's general contractor began construction on the plant and on the northern roadway before obtaining either a building permit from the building inspector or site plan approval from the planning commission. The contractor excavated and graded the roadway. When Town officials discovered work had been done prior to site plan approval, the building inspector issued a "stop work order." The next day,

USPC's site plan came before the Town's planning commission for approval. Commission members objected to the construction's commencement before site plan approval and to the northern roadway's entrance onto Casaloma Drive, in view of the present level of traffic congestion and its location directly opposite a residence.

Rather than approving the site plan, the commission referred the matter to the Town attorney, who drafted an agreement providing that: (1) the contractor would cease work involving construction of a public roadway other than the private road; and (2) the Town chairman did not object to the construction of the private roadway for USPC's exclusive use as long as it is not considered a public roadway. Although the contractor and the Town chairman signed the agreement, it was not brought before the commission.

The planning commission eventually voted to approve the USPC site plan on condition that: (1) the private road be removed as soon as the Department of Transportation installed the public road; and (2) a landscape and lighting plan be submitted to the commission for approval. After the southern public road was completed, USPC did not remove the private road, claiming that its trucks could not negotiate the southern public road's steep grade in winter months. The Town Board passed a resolution directing that the private road be removed in thirty days.

When USPC continued to use the private road, the Town brought a zoning enforcement action against USPC seeking a declaration that USPC unlawfully maintained a private road built to handle semi-truck traffic in violation of the Town's planning commission's conditional site plan approval. The Town's enforcement action also sought injunctive relief ordering

USPC to discontinue utilizing the road and to remove it at USPC's expense.

The action first proceeded to trial only on the declaratory judgment portion of the case. The trial court concluded that pursuant to §§ 61.34 and 62.23(4), STATS., the Town had authority to require site plan approval, that the Town's eventual approval was conditioned on the private road's removal as soon as the public road was available, that the condition was ripe requiring the road's removal, and that USPC's continued use of the private road violated the approval granted.

At the trial on the injunction request, USPC offered legal authority that it argued cast in doubt the Town's authority to enforce its initial denial of site plan approval, absent a showing of noncompliance with a stated rule or regulation. After the parties briefed the issue, the court reversed its declaratory judgment that the private road violated the conditional site approval. The trial court concluded that the Town was required to show, but could not establish, noncompliance with an announced or stated rule, standard or requirement as a basis for non-approval of the site plan. After denying the Town's motion to reconsider, the court entered judgment. The Town appealed and USPC filed its cross-appeal.

## ANALYSIS

██

Whether the Town lacked authority to seek enforcement of its conditional site plan approval requires the interpretation of applicable statutes and town ordinances. The construction and application of ordinances and statutes to a particular set of facts present questions of law we review de novo. *Eastman v.*

*City of Madison*, 117 Wis. 2d 106, 112, 342 N.W.2d 764, 767 (Ct. App. 1983); *Grosse v. Protective Life Ins. Co.*, 182 Wis. 2d 97, 105, 513 N.W.2d 592, 596 (1994).

We first consider the Town's authority to adopt ordinances authorizing the Town's planning commission to review and approve site plans as a condition precedent to issuing a building permit. Section 61.34(1), STATS., grants broad home rule authority to towns which have adopted village powers. It is undisputed in this case that the Town has village powers as authorized by §§ 60.10(2)(c) and 60.22(3), STATS.[1] Section 61.34(1) provides:

(1)    GENERAL GRANT. Except as otherwise provided by law, the village board shall have the management and control of the village property, finances, highways, streets, navigable waters, and the public service, and shall have power to act for the government and good order of the village, for its commercial benefit and for the health, safety, welfare and convenience of the public and may carry its powers into effect by license, regulation, suppression, borrowing, taxation, special assessment, appropriation, fine imprisonment, and other necessary or convenient means. The powers hereby conferred shall be in addition to all other grants and shall be limited only by express language.

[1] Section 60.10(2)(c), STATS., provides that a town meeting may: "Authorize the town board to exercise powers of a village board under s. 60.22(3)." Section 60.22(3), STATS., provides that the town board: "If authorized under s. 60.10(2)(c), may exercise powers relating to villages and conferred on village boards under ch. 61, except those powers which conflict with statutes relating to towns and town boards."

The statute further states that the powers granted shall be liberally construed to give the village the largest measure of self-government rights and authority. Section 61.34(5), STATS. To that end, § 62.23(7)(a), STATS., which is applied to village planning by § 61.35, STATS., grants local municipalities power to regulate and restrict land for industry by ordinance. Section 62.23(7)(a), STATS. Furthermore, under this statute, any ordinance must be liberally construed in the municipality's favor and as minimum requirements for the purposes stated. *Id.* Finally, § 62.23(1) authorizes the creation of planning commissions which under § 62.23(4) are accorded "such powers as may be necessary to enable it to perform its functions and promote municipal planning."

■

When considered in their totality, we conclude that these statutes unambiguously authorize the Town to adopt ordinances necessary to carry out its power to manage and control streets and to regulate land used for industry. By statute, the Town is authorized to adopt ordinances necessary to carry out its power to regulate land used for industry and streets and the Town has, in fact, adopted ordinances authorizing its planning commission to formally review and approve site plans based upon such factors as access and traffic flow, among other considerations. In accordance with these powers, the Town has adopted TOWN OF GRAND CHUTE, WIS., ORDINANCE § 27.05(10), which requires the submission of a site plan any time a building proposed in an industrial district exceeds 30,000 square feet in floor area.[2] In addition, the Town adopted TOWN OF

---

[2] TOWN OF GRAND CHUTE, WIS., ORDINANCE § 27.05(10), states: "A site plan is required under Section 27.10 for all buildings and structures exceeding 30,000 sq. ft. in floor area."

GRAND CHUTE, WIS., ORDINANCE § 27.10 (1997), which, significantly, requires that the site plan demonstrate access and traffic flow, among other matters of site plan concern, and specifically requires formal action by the Town's planning commission for site plan approval.[3] In this instance, the planning commission, guided by the factors outlined in these ordinances, provided conditional approval to USPC's site plan so that the project's construction could continue until the public road along the property's south side was completed. We conclude that the Town was authorized to require site plan approval.

USPC, however, relying on *State ex rel. Columbia Corp. v. Town Board of the Town of Pacific*, 92 Wis. 2d 767, 286 N.W.2d 130 (Ct. App. 1979), contends that the site plan factors contained in Town Ordinance 27.10 are not sufficiently specific to allow the planning commission to review traffic flow and that the Town must show non-compliance with a specific announced or

---

[3] TOWN OF GRAND CHUTE, WIS., ORDINANCE § 27.10 (1997), states:

1. *Applicability and Procedure.*

. . . .

A site plan approval shall require formal action of the Plan Commission.

2. *Contents.*

. . . .

c. A site plan containing the title of the project and the names of the project planner and developer, date, and north arrow and, based on an exact survey of the property drawn to a scale of sufficient size to show boundaries of the project, any existing streets, buildings, water courses, easements, and section lines; exact location of all buildings and structures; *access and traffic flow*; off-street parking and off-street loading areas; recreation facilities locations; and access of utilities and points of utility hookups. (Emphasis added.)

stated standard, rule, regulation or requirement as the basis for its non-approval. We disagree and conclude that USPC's reliance on *Columbia Corp.* is misplaced.

USPC contends that *Columbia Corp.*'s determination that the Town of Pacific lacked authority to reject proposed plats for development of a portion of the town controls the outcome of the issue before us. In *Columbia Corp.*, the town had no adopted ordinance vesting the town board with the power to approve or disapprove plats for development proposals within the township. *Id.* at 768, 286 N.W.2d at 131. The *Columbia Corp.* court concluded that the town was not empowered to approve or reject proposed platting of land within the township in the absence of an ordinance granting the township authority to do so. *Id.* at 779, 286 N.W.2d at 136. In reaching its conclusion that a specific ordinance granting power to the town board was required before the town could exercise such power, the *Columbia Corp.* court noted that the town's authority to act, and the criteria upon which the proposed plat would be reviewed were undisclosed to potential developers. *Id.* at 775–76, 286 N.W.2d at 134–35. In the absence of an ordinance establishing the town's power to review plats and the criteria upon which the review would be conducted, the town was without authority to reject proposed plats. *Id.* at 779, 286 N.W.2d at 136.

We conclude that *Columbia Corp.* is inapposite to the issues before us. Here, in contrast, the Town has enacted an ordinance that declares its concern as to the development of specific large industrial sites and the number of access points from Town roads into individual sites. Site development and access to those sites from Town roads are matters this ordinance reserved

for the Town planning commission's review and approval or rejection.

USPC argues that the criteria by which the Town will evaluate access to development sites is not sufficiently specific to meet the requirements of *Columbia Corp.* We do not agree. First, we note that the *Columbia Corp.* court's observation of the necessity of establishing criteria upon which plats will be evaluated concerns giving appropriate notice of the town's requirements to potential developers. *Id.* at 775–76, 286 N.W.2d at 134–35. *Columbia Corp.* does not deal with or require any particular degree of specificity when a town exercises its home rule powers as to development taking place within the township.

██ More importantly, *Columbia Corp.* deals with plat developments while the Town of Grand Chute's ordinance deals with site development. The access and traffic burden that is to be placed on town roadways must be evaluated on a case-by-case basis because the circumstances will vary substantially from one site to another. The size of the proposed facility, the traffic burden town roads already bear, the amount of traffic generated by the site's development, potential development in the immediate area that will impact upon traffic and other factors must be evaluated based upon the specifics of each case. A small facility on a little used town road will have different access implications from a major facility on an already overburdened town road. The development of more specific criteria, given the number of variables and the various factors that must be considered, is unnecessary. The ordinance identifies the Town's concern with access and traffic with sufficient specificity to give notice to the developer that the Town must approve the number of access

points based upon the traffic demands the new site development will have on the applicable Town roads. While we acknowledge that there must be a reasonable and rational basis underlying the Town's ultimate approval or rejection, we conclude it is unnecessary to require that the ordinance identify and enumerate with greater specificity every circumstance forming the basis for the Town's determination.

We conclude, therefore, that *Columbia Corp.* does not require that a town, regulating development within its boundaries, must create an ordinance with a particular degree of specificity other than is necessary to give developers reasonable notice of the areas of inquiry that the town will examine in approving or disapproving proposed sites. We further conclude that an ordinance regulating the development of plats will be substantially different from a town ordinance designed to control site development. A town's concerns in these two areas of development are different and the factors to be considered will vary based upon the nature of the development and the purpose for which town approval is mandated by the ordinance in question.

USPC cross-appeals contending that the Town lacks statutory authority to require site plan approval as a condition precedent to issuing a building permit for a use permitted as a matter of right. We have already determined that under § 61.34(1), STATS., the home rule statute, the Town is authorized to establish the right of approval for industrial site development within its boundaries. As long as the Town has adopted an ordinance vesting its planning commission with the authority to approve site plans for industrial sites, which it has adopted, USPC has no right to develop the

site in the absence of the Town's approval. Therefore, USPC's contention fails.

*By the Court.*—Judgment reversed and cause remanded with directions.