COURT OF APPEALS
DECISION
DATED AND FILED

October 26, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP1903-CR**

Cir. Ct. No. 2001CF202

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

SCOTT C. KIESON,

DEFENDANT-APPELLANT.

APPEAL from an order of the circuit court for Washington County: JAMES K. MUEHLBAUER, Judge. *Affirmed*.

Before Gundrum, P.J., Neubauer and Lazar, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.   Scott C. Kieson appeals from an order denying his postconviction motion for DNA testing under WIS. STAT. § 974.07(2) (2019-20).[1] After pleading guilty to first-degree sexual assault with use of a dangerous weapon, Kieson was convicted in 2002.  He asserts the circuit court[2] erroneously exercised its discretion in denying his 2021 motion for DNA testing of samples collected from the victim.  Kieson has not met his burden to sufficiently claim that he is innocent of the offense at issue, nor has he shown a reasonable probability that he would not have been prosecuted for this offense even with DNA evidence favorable to him.  Accordingly, we affirm.

¶2     The two samples that Kieson seeks to have tested consist of human semen taken from the seventeen-year-old victim of a sexual assault that occurred in June, 2001.  According to the amended complaint, the victim was in her home sleeping when she heard a knock at the door shortly after noon.  After another knock, a man entered the house.  He told her to lie on her stomach, pointed a crossbow at her, and proceeded to wrap duct tape around her arms.  The man then demanded to be taken to the room of a person who was living with the victim and her parents.  After briefly looking around that room and putting duct tape over her mouth, the man ordered the victim to lie on her back and raped her, threatening to shoot her with the crossbow.  The man left and drove away in a gray minivan.

¶3     The victim ran to her mother's room, and her mother called the police.  There is only one man mentioned in the amended complaint who was

_____

[1]  All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

[2]  The Honorable James K. Muehlbauer.

2

present during the assault. The victim positively identified Kieson as the man who sexually assaulted her in her home.

¶4     Police traced the gray minivan to the estranged wife of the person living with the victim and her family. This woman said that she had lent the vehicle to Kieson around noon on the day in question. Looking in the windows of the van, the police saw a roll of duct tape and a crossbow consistent with the tape and weapon used to commit the crime. The crime lab determined that Kieson's fingerprints were present on the duct tape and at the crime scene. Kieson was charged with both sexual assault and burglary.

¶5     Kieson pled guilty to the sexual-assault charge, as a repeater, and the burglary charge was dismissed, but read in. Citing "the gravity of this offense, [Kieson's] character and miserable criminal history," and the "need to protect the public," the circuit court[3] sentenced Kieson to fifty years of initial confinement followed by twenty years of extended supervision, consecutive to any other sentences.

¶6     This appeal arises from Kieson's 2021 motion for DNA testing pursuant to WIS. STAT. § 974.07(2). For the first time, Kieson suggested in that motion—twenty years after the crime occurred—that he was not alone in illegally entering the victim's house in an "attempt to recover money from a person who turned out not to be there" and that there was a "second male individual" with him. He further asserted that he had "no memory of actually committing" the sexual assault. "As such," Kieson claimed he was innocent of sexual assault, suggesting

---

[3] The Honorable Annette K. Ziegler sentenced Kieson.

that the other male with him could have committed the sexual assault. Kieson did not claim to be innocent of other potential offenses and did not deny being present in the victim's home at the time she was assaulted. He stated that at the time he was in the victim's home he "had been using cocaine and was altered or intoxicated thereon to the point where it is possible, if not probable, that it could have substantially affected his ability to maintain awareness and memory of what was happening."

¶7 The circuit court denied Kieson's motion for DNA testing without a hearing. The court made findings with respect to the four requirements of WIS. STAT. § 974.07(7)(a) that, if met, require a court to order testing. Relevant to our decision here, the court found that Kieson failed to meet the following two of four statutory requirements for court-ordered testing:

> 1. The movant claims that he or she is innocent of the offense at issue ….
>
> 2. It is reasonably probable that the movant would not have been prosecuted, convicted, found not guilty by reason of mental disease or defect, or adjudicated delinquent for the offense at issue … if exculpatory deoxyribonucleic acid testing results had been available before the prosecution, conviction, finding of not guilty, or adjudication for the offense.

Sec. 974.07(7)(a)1.-2.[4] With respect to the first requirement, the court found that "Kieson's claim of no memory is not a claim of innocence. A claim of actual

---

[4] The circuit court also found that the samples were no longer in possession of law enforcement, another requirement for court-ordered testing. *See* WIS. STAT. § 974.07(7)(a)4. Kieson argues that this finding is not supported by anything in the record other than the district attorney's argument in opposition to Kieson's motion. Because we conclude that other requirements for court-ordered testing are not met, we need not reach this issue. *See Sweet v. Berge*, 113 Wis. 2d 61, 67, 334 N.W.2d 559 (Ct. App. 1983) (when one issue is dispositive of an appeal, we need not reach other issues).

innocence, rather than speculation, is required" under the statute. With respect to the second requirement, the court found "no reasonable probability" that the outcome of Kieson's case would be different with exculpatory DNA evidence, noting the "other substantial evidence of Kieson's guilt, i.e. the duct tape, crossbow, finger prints, and Kieson's verified use of the borrowed gray Plymouth minivan (where the cross bow and duct tape were found), *during the exact time period the sexual assault occurred*."

¶8    We review the circuit court's determination as to whether the requirements of WIS. STAT. § 974.07(7) are met under the erroneous-exercise-of-discretion standard. *See State v. Hudson*, 2004 WI App 99, ¶16, 273 Wis. 2d 707, 681 N.W.2d 316. We affirm if the circuit court "rel[ied] on facts of record and the applicable law to reach a reasonable decision." *Id.* To the extent we must interpret § 974.07(7), we do so independently. *State v. Denny*, 2017 WI 17, ¶46, 373 Wis. 2d 390, 891 N.W.2d 144.

¶9    We begin with the statute's first requirement for court-ordered testing: the person seeking the testing must "claim[] that he ... is innocent of the offense at issue." WIS. STAT. § 974.07(7)(a)1. Here, the offense is first-degree sexual assault. Kieson asserts that he has no memory of committing it, and the assault could have been committed by the other male that he says was present in the victim's house on that day. Kieson has not cited any authority, nor has he developed a statutory-interpretation argument that suggests that a lack of memory or a speculative statement that one *might* not have committed the crime, rather than an affirmative assertion that one *did* not commit the crime, is sufficient to satisfy this requirement of § 974.07(7)(a)1.

¶10     We need not conduct our own statutory interpretation to decide that issue, however, because Kieson's statement that another male might have directly assaulted the victim is not equivalent to a claim of his innocence in view of the facts of this particular case.  Kieson admits that, at the very least, "he was one of two male individuals who illegally entered the victim's home" to commit burglary. He has acknowledged on the record that "[f]ingerprint analysis confirmed that he was present in the home and that his fingerprints were found on tape taken from a role [sic] of duct tape that had been in his possession previously."   These admissions, along with the circuit court's review of other "substantial" evidence[5] including the fact that Kieson "verified" borrowing the minivan to drive to and from the crime scene and that he kept the crossbow and duct tape that were used to commit the crime, both of which were discovered in that minivan—none of which Kieson disputes in his briefing to this court[6]—show that Kieson's new theory does nothing to undermine his criminal liability for "the offense at issue," WIS. STAT. § 974.07(7)(a)1, albeit as party to the crime under § 939.05, if Kieson's new version is accepted.

¶11     Wisconsin's party-to-a-crime statute provides that anyone "concerned in the commission of a crime is a principal and may be charged with and convicted of the commission of the crime although the person did not directly commit it and although the person who directly committed it has not been convicted."  WIS. STAT. § 939.05(1).  The statute abolishes any distinction in criminal liability between the person who directly commits a crime and one who

---

[5] The victim personally identified Kieson as her assailant.

[6] Kieson admits that he "and the second male had driven to the scene" and that the duct tape recovered from that vehicle "had been used during the sexual assault."

aids and abets in the commission of the crime (or conspires to commit the crime). Sec. 939.05(2)(a)-(c); *see also* **United States v. Rogers**, 179 F. Supp. 3d 881, 892 (E.D. Wis. 2016) ("[W]hether a defendant is alleged to be liable as a direct actor, an aider and abetter, and/or a conspirator is of no legal significance because each of these actors is equally liable for their commission of the offense in question."). Aiding and abetting includes taking an overt action to assist the person who commits a crime, with knowledge or belief that the person is committing a crime. *See* **State v. Asfoor**, 75 Wis. 2d 411, 427, 249 N.W.2d 529 (1977); *see also* WIS JI—CRIMINAL 400. "[O]ne who intentionally aids and abets the commission of a crime is responsible … for other crimes which are committed as a natural and probable consequence of the intended criminal acts." **Asfoor**, 75 Wis. 2d at 430.

¶12 It is Kieson's burden to claim innocence in order to obtain DNA testing under this statute. The circuit court did not erroneously exercise its discretion by concluding that his failure to disclaim anything other than—possibly—direct sexual assault was insufficient. Its conclusion was based on facts Kieson admits, which indicate, at a minimum, that Kieson assisted the alleged direct perpetrator with the overt acts of borrowing a minivan to drive to the house intending to burglarize it, providing the duct tape used to bind the victim, and fleeing with both the duct tape and the crossbow used in the assault in the borrowed minivan after the crime was committed.

¶13 For similar reasons, Kieson's theory that there was a second male in the house who could have directly assaulted the victim does not help him meet his burden to show, as required by WIS. STAT. § 974.07(7)(a)2., a reasonable probability that Kieson would not have been prosecuted for first-degree sexual assault had the favorable DNA evidence been available before prosecution. As the circuit court found (without specifying that a party-to-a-crime modifier could be

appropriate under Kieson's theory), there is "substantial evidence of Kieson's guilt, i.e. the duct tape, crossbow, fingerprints, and Kieson's verified use of the borrowed gray Plymouth minivan (where the cross bow and duct tape were found)," none of which are contested by Kieson—and all of this is in addition to the admission in his brief that he illegally entered and was present in the victim's home with the intent to burglarize it when the sexual assault occurred.

¶14    Thus, the circuit court's determination of "no reasonable probability" of a different outcome for Kieson regardless of DNA testing is supported by the facts in the record.  The court's conclusion—essentially, that the DNA evidence Kieson seeks would not be exculpatory, even if it pointed to someone other than himself—was not an erroneous exercise of discretion.

¶15    Because Kieson's admissions negate his claim of innocence and leave no reasonable probability that he would not be prosecuted for sexual assault even if DNA collected from the victim showed that another individual directly assaulted her, he has failed to meet his statutory burden of proof.  We affirm the circuit court's denial of Kieson's motion for DNA testing under WIS. STAT. § 974.07(2).

> *By the Court.*—Order affirmed.

> This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)5.